IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL W. NESBITT, | )<br>) |
| Plaintiff, | )<br>) Case No. 03 C 8308<br>) |
| v. | ) Magistrate Judge Morton Denlow<br>) |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

This case comes before this Court on the parties' cross-motions for summary judgment. Plaintiff Michael W. Nesbitt ("Claimant") challenges the decision of Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), claiming that her denial of his disability insurance benefits ("DIB") should be reversed or remanded because the decision contains errors of law and is not supported by substantial evidence. For the reasons that follow, this Court affirms the Commissioner's decision.

### I. BACKGROUND FACTS

#### A. PROCEDURAL HISTORY

Claimant filed an application for DIB on December 14, 1999, R. 93-95, alleging that he became unable to work due to back pain with an onset date of February 6, 1998. R. 115. Claimant was insured for DIB through June 25, 2002. R. 16. His claim was denied initially, R. 29-32, and upon reconsideration. R. 34-36. Plaintiff timely requested a hearing, R. 37,

30

which was held first on July 17, 2001 before Administrative Law Judge ("ALJ") Alan Jonas. R. 239-69. Following that hearing, the ALJ received additional information from a vocational expert that prompted a supplemental hearing. R. 271. The supplemental hearing was held on February 27, 2002. R. 270-310. On June 25, 2002, the ALJ issued an unfavorable decision, denying Claimant DIB and finding him not disabled. R. 11-26. On September 26, 2003, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner. R. 6-7. Claimant then filed this action against the Commissioner pursuant to 42 U.S.C. § 405(g). The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1).

## B. HEARING TESTIMONY

The ALJ held two hearings in this case. At the July 17, 2001 hearing, the ALJ heard testimony from a medical expert and from Claimant, who appeared with counsel. R. 239-69. At the supplemental hearing on February 27, 2002, the ALJ heard testimony from two vocational experts. R. 270-310.

### 1. Claimant's Testimony

Claimant, who was born on November 7, 1954, was forty-seven years old at the time of the first hearing, R. 93, and had completed high school and one year of college. R. 121. Prior to his alleged disability date, Claimant worked first as an auto mechanic and then as a sheet metal worker. R. 116.

As a sheet metal worker, Claimant, who was a shop foreman, constructed and installed heating and air conditioning units and performed duct work. *Id.* This work entailed stooping, kneeling, crouching, and crawling for at least two hours every day, and walking or standing for seven hours every day. *Id.* He frequently lifted fifty pounds or more. *Id.*

Claimant's injury occurred when he fell from a ladder at work and consequently sustained multiple disc annular tears, resultant intractable back pain, and an inability to ambulate. R. 169. At the emergency room, he was diagnosed with acute back pain strain versus disc herniation, and appeared very uncomfortable. R. 158-59. After being transferred to another hospital, Claimant underwent six days of bed rest and treatment. R. 169. He was discharged after achieving some improvement and minimal pain. *Id.*

He now claims to suffer from back and right leg pain and to be limited from overhead work and bending. R. 244-45. Daily nerve pinches limit his walking, sitting, and sleeping abilities. R. 245. In order to relieve his pain, Claimant moves around by switching his sitting or standing positions. R. 248-49. He takes pain relievers. R. 243.

Since he suffered his injuries, Claimant has lived alone in a trailer, R. 246, performing some household chores. R. 247. However, he can not perform house maintenance or stand up long enough to wash dishes. R 248. He drives a pick-up truck with an automatic transmission, although he frequently pulls over or stops driving because of his pain. R. 245-46, 250. He works at his home computer, though he spends no more than an hour doing that

3

work. R. 248. Claimant, however, believes that he may be able to perform a desk job involving computer work if he were allowed to move around. R. 249.

### 2. Irwin Rich, M.D. - Medical Expert

At the July 17, 2001 hearing, Dr. Irwin Rich, an orthopedic surgeon, testified as the Medical Expert ("ME"). R. 252-67. After reviewing the files and interviewing Claimant, the ME determined that Claimant has an impairment, R. 255, which limits Claimant's work capacity as follows:

> may lift 10 pounds occasionally at table height, may carry 10 pounds 15 feet, four times an hour in an eight hour day, sit and stand option is desirable, no bending, squatting, kneeling, reaching above mid chest height, or climbing ladders, may push 10 pounds total, wield device 15 feet, four times an hour

R. 256. Additionally, Claimant cannot stand for a couple of hours and sitting would depend on the comfort of the chair. R. 258. The limitations are based upon a reduction in the cushioning effect of the lumbar interadibal discs, R. 264-65, although the impairment is a result of mild disclogenic sclerosis in the lumbar sacral spine, deficiency of the shock-absorbing action of the lumbar discs, and mild disc bulges, which limit back function. R. 257. There are, however, no impingements on any of the lumbar nerves. *Id.* The ME concluded that the degree and frequency of pain Claimant complained of is greater than expected and not consistent with the objective evidence. R. 262.

### 3. Vocational Experts

#### a. Grace Gianforte

Vocational Expert ("VE") Grace Gianforte reported that 4,500 jobs exist in the Chicago metropolitan area that conform to Claimant's limitations. R. 24. She derived her

4

statistics from the State of Illinois Department of Employment Security Economic Information and Analysis Division from 1990 through 2005. R. 295.

### b. Susan Entenberg

Vocational Expert Susan Entenberg classified Claimant's job as a sheet metal worker as heavy and skilled, from which there are no transferable skills to sedentary or light work. R. 281. She testified that Claimant essentially should be restricted to sedentary sit/stand work, which includes cashier-type positions, some clerk jobs, but not a lobby attendant. R. 282. Using the Occupational Employment Statistics and Wages Estimates from the Department of Labor, VE Entenberg found a total of 18,790 sit/stand jobs suitable for Claimant. R. 283-85. The VE testified that her assessment would not change even if Claimant could do light work while restricted from repetitive bending, twisting, turning, pulling, pushing, gripping, and grasping, and is allowed a sit/stand option consistent with light work. R. 294-95.

## C. MEDICAL EVIDENCE

### 1. Dr. Spiros Stamelos - Treating Physician

Dr. Spiros Stamelos, an orthopedic surgeon, treated Claimant from February 7, 1998 until March 18, 2002, during which time Claimant's condition worsened. R. 226. Claimant's injury was "very serious" and was consistent with an acute annular tear or a herniated disc. R. 169-72. Although Claimant may need surgery, Dr. Stamelos recommended conservative treatment. *Id.*

5

Dr. Stamelos noted that as of March 18, 2002, Claimant had a vetebrogenic (spinal) disorder and significant limitation of spinal motion that medicine, injective therapy, physical therapy, rehabilitation, and time failed to improve. R. 226-27. Claimant's combined impairments are medically equivalent to the severity of conditions in the vertobrogenic disorder impairment. R. 228. However, Claimant had normal neurological functioning with no reflex loss and no sensory loss. R. 226. Dr. Stamelos opines that Claimant could lift five pounds safely during one-third of an eight-hour work day and safely lift 2.5 pounds during two-thirds of an eight-hour work day. *Id.* He concluded that there were no objective findings to match the findings required for listing 1.05C - Other Vertebrogenic Disorders. R. 228.

### 2. Dr. Arvind K. Goyal - Treating Physician

Dr. Arvind Goyal evaluated Claimant on February 9, 1998 and determined that Claimant had severe low back pain with right sciatica. R. 175. Claimant's pain was likely associated with local contusion, sprain and multiple small bulging discs, and possibly an acute herniated nucleus pulposus. *Id.* Additionally, Claimant had not responded well to the conservative treatment prescribed by Dr. Stamelos. *Id.*

### 3. Dr. David L. Spencer - Examining Physician

In September 1998, Dr. David L. Spencer, an orthopedic surgeon, stated that Claimant was his patient, who he had believed to be credible and sincere about complaints of pain. R. 229. However, on his most recent visit, Claimant had demonstrated flagrant displays of

symptom magnification, which changed Dr. Spencer's opinion about Claimant's credibility and sincerity. *Id.* Consequently, Dr. Spencer declined to recommend back surgery and instead recommended a Minnesota Multiphasic Personality Inventory. *Id.*

### 4. Dr. Sid Shafer - Examining Physician

On October 5, 1998, Dr. Sid Shafer, an orthopedic surgeon, examined Claimant. R. 190-91. Claimant complained of back and leg pain, but did exercises at home and performed household chores. R. 190. Dr. Shafer noted that Claimant had gross abnormal movements that prevented him from standing up straight or sitting comfortably, though Claimant eventually stood and walked with good posture. R. 191. Although Claimant writhed and complained of pain in various areas of his back during range of motion tests, Dr. Shafer found that Claimant's ranges of hip motion were excellent, his knee motions were satisfactory, and his leg reflexes, circulation, and sensory responses were normal. *Id.* Dr. Shafer noted that straight leg raising was normal to ninety degrees when seated, but was limited on the right and left when supine. *Id.* There was limited motion of the lumbosacral spine in all directions, but Dr. Shafer noted inconsistencies within that range of motion testing. *Id.*

In addition to noting his test results, Dr. Shafer reported that he viewed a surveillance video of Claimant, which showed that Claimant had an excellent gait, was able to drive and to move around quite well, and did not have the functional disabilities that he presented during his examination. *Id.* Dr. Shafer opined that Claimant could engage in gainful employment. R. 192.

7

### 5. Dr. Michael Kornblatt - Examining Physician

Dr. Michael Kornblatt, an orthopedic surgeon, reported on March 1, 1999, that Claimant had a history of magnifying his symptoms. R. 193-94. He noted that Claimant's gait was slow. R. 194. Dr. Kornblatt concluded that Claimant had degenerative disc disease of the lumbar spine, with chronic lower back pain and right leg pain. R. 195. During the examination, Claimant complained of constant low back pain and the inability to perform any prolonged activities. R. 194. Nonetheless, Dr. Kornblatt stated that Claimant could not perform his normal gainful employment but could perform light and sedentary duties. R. 195.

### 6. Dr. Stephen Marshall - Examining Physician

On March 8, 2000, Dr. Stephen Marshall examined Claimant on behalf of the Illinois Department of Human Services. R. 201-03. He found that Claimant was unable to work because of low back and right leg pain, and that Claimant was unable to drive his pick up truck because sitting up straight and hitting bumps caused him back pain. R. 147, 201-03.

Dr. Marshall noted that Claimant appeared uncomfortable sitting and could walk on his toes, but could not walk on his heels without pain. R. 203. Dr. Marshall also found that Claimant could walk down a hall without assistance, though he listed toward the left and had an unusual hopping gait, pushing off a straight, stiff, right leg, which was surprising because that was Claimant's more painful leg. *Id.*

8

## D. THE ALJ'S DECISION

On June 25, 2002, the ALJ issued an unfavorable decision, finding Claimant not disabled. R. 11-26. The ALJ followed the familiar five-step analysis to determine disability. R. 16-24. At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity during the relevant period. R. 16. At step two, the ALJ found that Claimant has sprains and strains, which constitute a severe impairment. R. 16-17. At step three, the ALJ determined that Claimant's impairment, though severe, does not meet or equal the requirements of a listed impairment. R. 17. Pursuant to step four, the ALJ determined Claimant's residual functional capacity.

The ALJ determined the following:

> [T]he claimant retains the residual functional capacity for all work activity except for work which involves lifting and/or carrying more than 10 pounds occasionally or 5 pounds frequently; performing tasks that do not allow sit/stand option; repetitive bending; twisting and turning; repetitive pushing, pulling, gripping or grasping; using air or vibrating tools; and working around machinery/unprotected heights.

*Id.*

The ALJ found that the objective medical evidence failed to provide strong support for Claimant's purported symptoms and limitations. R. 18. After reviewing the medical evidence and considering the reports of the many doctors who examined Claimant, the ALJ determined that, with the exception of Dr. Stamelos, there are no treating or examining physician opinions indicating that Claimant is disabled or has limitations greater than those listed in his residual functional capacity finding. R. 21. The ALJ points out that Drs. Shafer,

Kornblatt, and Spencer note that Claimant is over-dramatizing his problems and that they concluded that Claimant's condition was not completely disabling. *Id.* Finally, the ALJ refused to give controlling weight to the opinion of Dr. Stamelos because that opinion lacks substantial support from the other evidence of record and is "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." R. 21. Instead, the ALJ relied upon the statements from the various doctors who released Claimant to return to work, though with some restrictions. *Id.*

The ALJ also relied heavily on the testimony of ME Dr. Rich. *Id.* He adopted and accepted the opinion of the ME as reflective of the record as a whole. R. 22. Furthermore, the ALJ discredited Claimant's testimony. *Id.* The ALJ found that the "record includes evidence strongly suggesting that the claimant has exaggerated symptoms and limitations." *Id.*

Thus, pursuant to the fourth step in the sequential evaluation, the ALJ found that no greater or additional limitations beyond the previously determined residual functional capacity are justified. R. 23. As a result, Claimant can not return to any of his past relevant work, which required heavy exertion. *Id.*

Acknowledging that the burden now shifts to the Commissioner at step five, the ALJ noted that Claimant is capable of performing a significant range of sedentary work as defined in 20 C.F.R. § 404.1567. *Id.* Additionally, the ALJ determined that a significant number of jobs in the national economy exist that claimant can perform given his residual functional

capacity and other vocational factors. R. 24. To reach this conclusion, the ALJ relied on the opinions of VEs Entenberg and Gianforte. *Id.* Based on their opinions, he noted that there are sit/stand option jobs that Claimant could perform. *Id.* Although the total number of such jobs was either 4,500 or 18,790, the ALJ found that both numbers are significant. *Id.*

The ALJ concluded that Claimant is capable of successfully adjusting to work that exists in significant numbers in the national economy. *Id.* As a result, the ALJ found Claimant to be "not disabled." *Id.*

### III. LEGAL STANDARDS

#### A. STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Scivally v. Sullivan*, 96 F.2d 1070, 1075 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it can not stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), but does not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration, *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id.*; *Scivally*, 966 F.2d at 1075. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B. DISABILITY STANDARD

Disability insurance benefits are available to claimants who can establish "disability" under the terms of the Social Security Act. *Brewer v. Carter*, 103 F.3d 1384, 1390 (7th Cir. 1997). An individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, a disabled individual is eligible for DIB only if that individual is under a disability. *Id.* § 423(a). An individual is under a disability if she is unable to do her previous work and can not, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if, at any step of the process, the ALJ finds that the claimant is not disabled. *Id.* The ALJ must inquire: (1) whether the claimant is working in any substantial gainful activity; (2) whether the claimant's impairment is severe; (3) whether the impairment meets or equals a listed impairment in 20 C.F.R., pt. 404, subpt. P, App. 1; (4) whether the claimant is able to perform her past relevant work; and (5) whether the claimant's age, education, and past relevant work experience in reference to her residual functional capacity, enable her to do other work. *Id.* § 404.1520(a)(4)(i)-(v). In order to determine whether the claimant can perform any past relevant work (step 4), the ALJ assesses the claimant's residual functional capacity ("RFC"). *Id.* § 404.1520(e). The RFC is defined as the most an individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities. *Id.* § 404.1545. The burden of proof is on the claimant through step four; the burden shifts to the Commissioner only at step five. *Clifford v. Apfel*,

227 F.3d 863, 868 (7th Cir. 2000). At step five of the disability analysis, the Commissioner has the burden of proving that Plaintiff has the ability to engage in other work existing in significant numbers in the national economy. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

## IV. DISCUSSION

Claimant raises five issues for review: (1) whether the ALJ made an incomplete RFC finding; (2) whether Claimant is able to perform a significant range of sedentary work; (3) whether the ALJ made an improper credibility determination; (4) whether the ALJ improperly disregarded evidence that Plaintiff has trouble driving his truck; and (5) whether Claimant is disabled under a subjective complaints theory. The Court will address each issue in turn.

### A. THE ALJ DID NOT MAKE AN INCOMPLETE RFC FINDING

In this case, it is undisputed that Claimant requires a sit/stand option. In other words, while doing sedentary work, Claimant must alternate between sitting and standing periodically. According to Social Security Ruling 96-9p, where this need can not be accommodated the occupational base for a full range of unskilled sedentary work will be eroded. SSR 96-9p, 1996 WL 374185, at *7. The extent of the erosion, however, depends upon the facts of the case, such as the frequency of the need to alternate between sitting and standing and the duration of the need to stand. *Id.* "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." *Id.*

Claimant argues that the ALJ in this case failed to specify the frequency as to the sit/stand option in the RFC finding. The Court agrees that the frequency of the sit/stand option was not explicitly set forth in the ALJ's RFC discussion. However, it was clearly understood by the VEs, upon whose determination the ALJ's decision ultimately rests, that the sit/stand option means that a person can either sit or stand whenever he or she wants. R. 24, 297-98. Therefore, the frequency and duration of the sit/stand option implicitly is an indefinite period of time – Claimant could either sit or stand as often as he would like and for however long he would like. Any change to that limitation would only increase the number of jobs Claimant could perform. Therefore, the ALJ did not make an improper RFC determination.

Next, Claimant argues that the ALJ gave an inaccurate hypothetical to the VE because the ALJ stated that Claimant could not do repetitive bending when the evidence shows that Claimant can not bend at all. If the ALJ gives an inaccurate hypothetical to the VE, remand is warranted. *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2002). This issue made no difference because the ALJ presented both hypotheticals to the VE.

Initially, the ALJ presented several limitations to the VEs at the hearing. R. 281. Those limitations where contained in a letter that was submitted in response to a July 18, 2001 letter from Claimant's attorney to VE Gianforte. *See Nesbitt v. Barnhart*, No. 03 C 8308 (N.D. Ill. minute order dated Sept. 13, 2004) (granting Claimant's motion to supplement the record with the July 18, 2001 letter). One of those limitations is that

Claimant could not bend. Based upon those limitations, VE Entenberg testified that Claimant could do sedentary sit/stand work. R. 294. The ALJ then asked VE Entenberg whether her assessment would change from sedentary sit/stand work to light sit/stand work even if hypothetically Claimant could do light work while restricted from repetitive bending, twisting, turning, pulling, pushing, gripping, and grasping, and is allowed a sit/stand option consistent with light work. R. 294-95. She said that her opinion would not change. R. 295.

Claimant asserts that the change from no bending to repetitive bending is inaccurate and requires remand because the inability to bend will eliminate the jobs identified by the VE. This Court disagrees. The ALJ's hypothetical merely served to clarify that, even if Claimant had slightly more ability than he alleged, his ability to do nothing more than sedentary sit/stand work would not change.

## B. CLAIMANT IS ABLE TO PERFORM SEDENTARY WORK

An ALJ may not "play doctor" by making independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Claimant asserts that the ALJ impermissibly played doctor when he ignored the opinion of the ME that Claimant can not stoop and is limited to lifting up to ten pounds occasionally at table height for fifteen feet. These two conditions potentially render Claimant unable to perform most sedentary jobs. *See Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994).

The Court finds that the ALJ's determination that Claimant could perform sedentary work is supported by substantial evidence. In reaching his decision, the ALJ relied on the

opinions and findings of a medical expert, a treating physician, and several examining physicians. For example, the ME found that Claimant had normal neurological functioning and only mild spinal abnormalities, making Claimant able to perform a range of sedentary work with a sit/stand option that did not require bending, squatting, reaching, or climbing ladders. R. 256-57. Dr. Stamelos, Claimant's own treating physician, reported that Claimant had normal neurological functioning despite his complaints about pain. R. 226. Dr. Shafer, an examining physician, found that Claimant had normal neurological functioning, good posture, and the abilities to stand and to walk. R. 191. Dr. Kornblatt, another examining physician, opined that Clamant could perform light or sedentary work. R. 195. Finally, Dr. Marshall, an examining physician, noted that Claimant could walk unassisted and had no sensory or reflex deficit. R. 147, 203.

## C. THE ALJ MADE A PROPER CREDIBILITY DETERMINATION

The Social Security regulations require the Commissioner to consider a claimant's statements about his or her symptoms and how they affect the claimant's daily life and ability to work. 20 C.F.R. §§ 404.1529(a), 416.929(a). There is a two-part test for determining whether complaints of pain contribute to a finding of disability. First, the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b). Second, if the ALJ finds an impairment that reasonably could cause the symptoms alleged, he must consider the persistence and intensity

of these symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). However, neither the ALJ nor this Court must give "full credit to every statement of pain, and require a finding of disabled work." *Bucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). A court will not set aside an ALJ's credibility determination unless it is "patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

There is ample independent support for the ALJ's credibility determination. First, Claimant "demonstrated such flagrant findings of symptom magnification" that Dr. Spencer altered his opinion concerning the authenticity of Claimant's subjective complaints of pain. R. 229. Second, Claimant demonstrated actions that were inconsistent with his alleged pain when he limped by pushing off his theoretically more painful leg. R. 203. Third, Dr. Kornblatt noted that Claimant magnified his symptoms. R. 193-94. Therefore, the ALJ's credibility determination was not patently wrong and will not be reversed.

### D. THE ALJ'S FAILURE TO DISCUSS CLAIMANT'S TROUBLE DRIVING IS NOT LEGAL ERROR

Claimant argues that the ALJ committed legal error by determining that Claimant "owns a pick up truck and has no problem driving it," R. 17, without considering Dr. Marshall's report that Claimant could not drive much because "it causes back pain when he has to sit up straight or when he hits a bump," R. 203, or the fact that he has to pull over or stop due to back pain whenever he drives the truck. R. 250. This lack of consideration of the evidence, according to Claimant, demonstrates that the ALJ's decision was not based upon all of the relevant evidence in the record. *See Garfield v. Schweiker*, 732 F.2d 605, 609

18

(7th Cir. 1984). Claimant's challenge fails, however, because the ALJ is not required to discuss every piece of evidence in the record. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

E. **CLAIMANT IS NOT DISABLED UNDER A SUBJECTIVE COMPLAINTS THEORY**

Finally, Claimant avers that his subjective complaints prove that he is "disabled" within the meaning of the Social Security Act because he has shown "1) evidence of an objectively adduced abnormality and, either 2) objective medical evidence supporting the subjective complaints issuing from that abnormality, or 3) that the abnormality is of a nature in which it is reasonable to conclude that the subjective complaints are a result of that condition." *Veal v. Bowen*, 833 F.2d 693, 698 (7th Cir. 1987). Whether Claimant actually can establish the three prongs of the subjective complaints theory is immaterial because a necessary element of the subjective complaints theory is the existence of credible subjective complaints. *See id.* In this case, the ALJ found that Claimant lacks credibility, and this Court has concluded that the record substantially supports that determination. Therefore, Claimant's subjective complaints reasonably have been rejected by the ALJ. Consequently, Claimant's challenge under the subjective complaints theory fails.

## V. CONCLUSION

The ALJ's opinion was complete and was supported by substantial evidence. The ALJ's determinaiton that Claimant can perform sedentary work has a substantial basis in the record. **For the reasons set forth in this opinion, Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The Commissioner's decision to deny Claimant's disability insurance benefits is affirmed.**

**SO ORDERED THIS 13th DAY OF SEPTEMBER, 2004.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


**Copies mailed to:**

David A. Bryant
DALEY, DeBOFSKY & BRYANT
1 N. LaSalle St.
Suite 3800
Chicago, IL 60602

Counsel for Plaintiff

Catherine A. Seagle
SPECIAL ASSISTANT
UNITED STATES ATTORNEY
200 West Adams Street
30th Floor
Chicago, IL 60606

Counsel for Defendants